UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

SHAWNA N-M.,

                Plaintiff,

   v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

Case No. 3:23-cv-5677-TLF

ORDER REVERSING AND REMANDING DEFENDANT'S DECISION TO DENY BENEFITS

Plaintiff filed this action pursuant to 42 U.S.C. § 405(g) for judicial review of defendant's denial of her application for supplemental security income ("SSI"). Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. Dkt. 2. Plaintiff challenges the ALJ's decision finding that plaintiff was not disabled. Dkt. 5, Complaint.

## DISCUSSION

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of Social Security benefits only if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Revels v. Berryhill,* 874 F.3d 648, 654 (9th Cir. 2017) (internal citations omitted). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Biestek v. Berryhill,* 139 S. Ct. 1148, 1154 (2019) (internal citations

omitted). The Court must consider the administrative record as a whole. *Garrison v. Colvin,* 759 F.3d 995, 1009 (9th Cir. 2014). The Court also must weigh both the evidence that supports and evidence that does not support the ALJ's conclusion. *Id.* The Court may not affirm the decision of the ALJ for a reason upon which the ALJ did not rely. *Id.* Rather, only the reasons identified by the ALJ are considered in the scope of the Court's review. *Id.* If the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld...." *Ford v. Saul,* 950 F.3d 1141, 1154 (9th Cir. 2020) (citation, alteration, and internal quotation marks omitted).

**1. Medical evidence.**

Plaintiff challenges the ALJ's assessment of the medical opinions of Mark Heilbrunn, MD; Howard Platter, MD; and Florence Fadele, DNP, as well as the medical opinions of several mental health experts. *See generally* Dkt. 9. Plaintiff filed her application prior to March 27, 2017, therefore under the applicable regulations, an ALJ must provide "clear and convincing" reasons to reject the uncontradicted opinions of an examining doctor, and "specific and legitimate" reasons to reject the contradicted opinions of an examining doctor. *See Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995). When a treating or examining physician's opinion is contradicted, the opinion can be rejected "for specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* (citing *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).

A. Drs. Heilbrunn and Platter

Based on an examination of plaintiff, Dr. Heilbrunn opined in November 2016 plaintiff could lift or carry no more than five pounds, could not reach with her right

shoulder, was limited in handling and fingering, and could not push or pull more than occasionally. *See* AR 693. State agency medical consultant Dr. Platter opined in December 2016 that plaintiff was limited to only occasional right overhead reaching and was limited in her handling and fingering abilities. AR 242–43.

For several reasons, the ALJ gave both opinions little weight. *See* AR 29. First, the ALJ found Dr. Heilbrunn's physical exam findings "were benign." AR 29. But Dr. Heilbrunn's physical examination noted tenderness with abduction, flexion, rotation, and extension of Plaintiff's shoulders; found she had swelling in certain parts of her joints; and found reduced bilateral grip and pinch strength. AR 692. This finding is not supported by substantial evidence.

Second, the ALJ noted Plaintiff did not seek treatment for many of her physical issues and that treatments for some of her impairments were conservative. AR 29. However, the ALJ failed to "consider[] possible reasons" that plaintiff might not "seek treatment"—such as, for instance, plaintiff's financial issues (*see* AR 649, 654)—as he was required to do. *See* SSR 16-3p; *see also Eitner v. Saul*, 835 Fed. App'x 932, 933 (9th Cir. 2021) (unpublished opinion) (finding ALJ failed to consider possible reasons a claimant failed to seek treatment where "the ALJ asked Claimant whether he had received any specific treatment for the condition, but the inquiry ended there").

Third, the ALJ noted "the medical evidence also shows that [plaintiff] was healthy." AR 29. In support, Commissioner cites to three treatment notes. *See* Dkt. 13 at 5. The first (AR 718) is a June 2017 mental health treatment note where plaintiff said her general health was "very good" and that she had not "had anything bad in the past 5 years." Given that the note was in the context of a mental health appointment and Drs.

Heilbrunn and Platter's opinions suggested plaintiff did have physical limitations at when the opinions were rendered, this is not substantial evidence to support the ALJ's statement that plaintiff was "healthy." The second and third are treatment notes showing mild to moderate osteoarthritis (AR 687, 695), which do not support the ALJ's statement that plaintiff was "healthy." The Court cannot discern, without further explanation from the ALJ, why such results are inconsistent with the opinions of Drs. Heilbrunn and Platter.

Finally, the ALJ discounted the opinions because they were inconsistent with plaintiff's activities of walking, riding a bike, and her activities of daily living. AR 29 (citing AR 526–36, 648, 698, 710, 1560). But neither the ALJ's decision or the evidence it cites suggests the activities which plaintiff completed involved pushing, pulling, reaching, and lifting with her fingers and arms. Thus, the ALJ's finding that plaintiff completed activities inconsistent with the opinions of Drs. Heilbrunn and Platter is not supported by substantial evidence.

In sum, the ALJ failed to provide specific and legitimate reasons for discounting Dr. Heilbrunn's opinion, and failed to provide valid reasons for rejecting Dr. Platter's. This error is not harmless, as both physicians opined limitations not reflected in the ALJ's residual functional capacity (RFC) assessment. *See Carmickle v. Comm'r. Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008).

B.  DNP Fadele

DNP Fadele opined in October 2019 that plaintiff was capable of only performing sedentary work. AR 1398. Her opinion was based on plaintiff's left foot pain and left forearm pain. AR 1397. The ALJ discounted the opinion, in part, because evidence

suggested plaintiff's pain was pain was limited after she underwent surgery – surgery that occurred subsequent to the date of this opinion. AR 30 (citing AR 1584). Plaintiff contends this was an erroneous finding because records "contradict [the ALJ's] finding that [plaintiff's] lower extremity healed well after surgery," but plaintiff cites to no evidence plaintiff continued to experience left foot and forearm pain, the basis of DNP Fadele's opinion. *See* Dkt. 9 at 14. As such, the ALJ gave germane reasons for discounting DNP Fadele's opinion, as he was required to do under the applicable regulations. *See* 20 C.F.R. § 416.902(a)(7) (nurse practitioners are not "acceptable medical sources" for claims filed before March 27, 2017); *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) ("The ALJ may discount testimony from these 'other sources' if the ALJ 'gives reasons germane to each witness for doing so.'"); *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005) (inconsistency with medical evidence is germane reason).

      C.  Mental Health Opinions

Plaintiff describes the medical opinions of June Hayward, PsyD; Scott Alvord, PsyD; Thomas Clifford, PhD; Michael Brown, PhD; and Kimberly Wheeler, PhD. *See* Dkt. 9 at 15–17. The ALJ discounted these opinions because they were inconsistent with: normal mental examination results, plaintiff's activities of daily living, and plaintiff's limited treatment. *See* AR 23–24.

The ALJ's decision is not supported by substantial evidence, concerning the mental health expert opinions. Plaintiff's activities of daily living were minimal; the record shows she had very little social or self-care activity. See, e.g., AR 70-72, 77, 528-531, 648, 697, 1560 (plaintiff lived alone, spent weeks without leaving her apartment,

shopped infrequently, could not do much work around the house or self care, occasionally walked on the beach, read books, listened to music). These activities do not contradict the mental health opinion evidence.

Normal examination results cited by the ALJ (AR 21, citing 2 F/1, 5 [AR 647, 651]; 13 F/1, 2, 4 [AR 696-697, 699]; 20 F/27, 32 [AR 1420, 1425]) were taken out of context – the remaining portions of those reports show that the mental health experts cited to examples of plaintiff's functional difficulties, and symptoms and behavior that supported findings of marked or severe limitations. Cycles of improvement, and then downturns with more pronounced symptoms, may be due to waxing and waning of symptoms. *Garrison v. Colvin,* 759 F.3d 995, 1017 (9th Cir. 2014). In addition, the records may not be cherry-picked; here, the ALJ focused on a few areas of improvement while ignoring the overall diagnostic record. *See Ghanim v. Colvin*, 763 F.3d 1154, 1161-1163 (9th Cir. 2014).

The ALJ found plaintiff failed to give any good reasons for not taking mental health medications, and for not participating in mental health care. AR 21-22.

The ALJ asked questions about plaintiff's abuse of methamphetamine, and alcohol use. AR 55-60. Plaintiff did not deny this, and the ALJ did not address whether plaintiff's mental health symptoms may have been linked to drug use or alcohol use. As discussed above, the ALJ summarily rejected plaintiff's concerns and failed to "consider[] possible reasons" that plaintiff might not "seek treatment"—such as, for instance, plaintiff was afraid of doctors and did not trust the medical providers (AR 697, 699, 1225), mental health medication caused side effects and she said it made her "feel like a zombie" (AR 697-698, 710, 1238), plaintiff had financial issues (AR 654-667, 706,

e.g., homeless in 2010, trailer damaged and living situation unstable in 2017). *See* SSR 16-3p. *See Eitner v. Saul*, 835 Fed. App'x 932, 933 (9th Cir. 2021) (unpublished opinion) (finding ALJ failed to consider possible reasons a claimant failed to seek treatment where "the ALJ asked Claimant whether he had received any specific treatment for the condition, but the inquiry ended there").

The ALJ failed to provide specific and legitimate reasons for discounting the mental health opinion evidence. This error is not harmless, as the mental health professionals opined limitations are not reflected in the ALJ's decision at steps two through five, including the residual functional capacity (RFC) assessment. *See Carmickle v. Comm'r. Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008). If the ALJ had posed hypotheticals to the Vocational Expert regarding mental health symptoms and limitations, the RFC may have then included mental health limitations.

**2. Whether the ALJ Properly Evaluated Plaintiff's Severe Impairments**

Plaintiff assigns error to the ALJ's evaluation of their severe impairments at step two of the sequential evaluation—specifically, the ALJ's finding that plaintiff's upper extremity impairments were not severe. Dkt. 9 at 12–13.

Commissioner does not specifically defend the ALJ's step two findings with respect to these impairments but, rather, contends any error with respect to the ALJ's step two finding is harmless because "where the ALJ decides step two in the claimant's favor, as occurred here, any alleged error at that step is harmless." Dkt. 13 at 3 (citing *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017)). Indeed, because the ALJ must consider limitations and restrictions stemming from non-severe impairments in

formulating the RFC, ordinarily a non-severity finding will be harmless. *See Buck*, 869 F.3d at 1049.

Here, however, the ALJ did not decide step two entirely in plaintiff's favor— rather, the ALJ found plaintiff did not have any impairment or combination of impairments which were severe prior to November 3, 2017, but did have severe impairments after that date. *See* AR 18, 25. In formulating the RFC, the ALJ did not explicitly limit the scope of the RFC to the period after that date (*see* AR 26) but only summarized the medical evidence beginning in November 2017 (*see* AR 27) – although he did consider medical opinions from 2016 (AR 29). Thus, at the very least, the decision is ambiguous as to whether the ALJ considered plaintiff's non-severe impairments during the period preceding November 3, 2017, in formulating the RFC. Because the Court has already found reversible error and Commissioner does not defend the ALJ's step two rationale, the Court need not determine whether the ALJ's step two finding was harmful error. Rather, it directs Commissioner to reevaluate the medical evidence on remand and, if appropriate, reconsider its step two finding.

3. **Remand**

Plaintiff requests the Court remand the case for further administrative proceedings. *See* Dkt. 9 at 2, 4, 18. Plaintiff makes two additional requests which the Court declines. First, she requests the Court require a new ALJ be appointed (*id.* at 17) but "actual bias must be shown to disqualify an [ALJ]," *Bunnell v. Barnhart*, 336 F.3d 1112, 1115 (9th Cir. 2003), and plaintiff has not shown actual bias is present (*see* Dkt. 9

at 17).[1] Second, plaintiff requests the Court require the ALJ perform an analysis of the affect of plaintiff's drug and alcohol abuse on her impairments (*id.* at 18) but an ALJ is only required to do so upon finding a claimant's impairments are the product of drug and alcohol abuse, *see Bustamante v. Massanari*, 262 F.3d 949, 955 (9th Cir. 2001), and the ALJ made no such finding here, *see* AR 22 ("The undersigned is unable to determine the extent of her substance use during the relevant period[.]").

## CONCLUSION

Based on the foregoing discussion, the Court concludes the ALJ improperly determined plaintiff to be not disabled. Therefore, the ALJ's decision is reversed and remanded for further administrative proceedings.

Dated this 15th day of July, 2024.

Theresa L. Fricke
United States Magistrate Judge

---

[1] Plaintiff points out that the ALJ "has already heard the case twice" (Dkt. 9 at 17), an apparent reference to Commissioner's policy requiring reassignment after an ALJ has considered a case twice, reflected in its Hearings, Appeals, and Litigation Manual (HALLEX) § I-2-1-5(D)(2). But "HALLEX does not have the force and effect of law" and therefore "it is not binding on the Commissioner and [the Court] will not review allegations of noncompliance with the manual." *Moore v. Apfel*, 216 F.3d 864, 869 (9th Cir. 2000).